## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| L.C. | : CIVIL ACTION |
| | : |
| v. | : NO. 17-989 |
| | : |
| LAUREL SCHOOL DISTRICT | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                  **March 23, 2018**

Federal law protects children with defined learning challenges by allowing parents and school districts to appeal decisions from fact-finding administrative hearing panels to us. We today address what happens when the parents bringing an appeal of limited issues terminate parental rights and a volunteer state appointed educational surrogate parent disagrees both with the hearing panel and with the parents' earlier-filed appeal. The educational surrogate parent wants to dismiss the child's claims – now close to resolution - for limited relief without consideration. She cites no harm to the child or loss of time or money to her. We are not bound by the educational surrogate parent's decision; instead, we must focus on the child's best interest before we dismiss these pending claims for expanded services on her behalf for no consideration. We expect the educational surrogate parent will act in the child's best interests and follow the hearing panel and our Order. While we are concerned with the educational surrogate parent's possibly uninformed view to date, we will not appoint another guardian ad litem for purposes of this case absent evidence the educational surrogate parent is not acting in the child's best interest and without a suitable guardian. We are close to resolving these important issues. Dismissal of claims now without consideration is not in the child's best interests. We deny the school district's motion to dismiss and the cross-motion for appointment of a guardian ad litem in the accompanying Order.

## I. Relevant facts adduced from briefs and our best interests hearing.

Twelve year old L.C. suffers from idiopathic intracranial hypertension and has significant fine motor and sensor needs.[1] Child Protective Services removed L.C. and her two siblings from their biological parent's home at five years old when L.C. could speak just four words: mommy, daddy, cat, and eat and she suffered from microcephaly, ear infections, dental issues, motor jerking movements, sleep difficulties, and speech and language delays.[2] L.C. then lived with two foster families.[3] Child Protective Services removed L.C. from her first foster home because her biological sister sexually abused another child in the home.[4] The same sister sexually abused L.C., as well.[5]

In 2012, B.C. and A.Z. adopted L.C.[6] L.C.'s adoptive parents enrolled her in Laurel School District.[7] In 2015, with the guidance of L.C.'s mental health providers, L.C.'s adoptive parents enrolled her in the Delaware Guidance Services Day Treatment program.[8] The District and the Day Treatment Program provided L.C.'s education defined in her individualized education program ("IEP"). At least once every three years, L.C.'s IEP team meet to re-evaluate L.C.[9] The IEP team most recently met in the Fall 2015.[10] The IEP team performed a cognitive assessment, an academic achievement test, adaptive skills assessment, and behavioral assessment.[11] The IEP team summarized L.C.'s results in an evaluation summary report.[12]

Two months later, L.C. experienced homicidal ideations resulting in a stay with the Rockford Center inpatient program for over a month.[13] L.C. then moved to Terry Children's Psychiatric Center and remained there for nearly two months.[14] Upon discharge from the Terry Children's Psychiatric Center, L.C. returned to the District to complete her school year.[15]

2

### a. Due Process Hearing Panel's April 21, 2017 Order.

The following school year, L.C.'s adoptive parents expressed concerns about the evaluation summary report the IEP team relied upon to create her educational plan for the year.[16] L.C.'s adoptive parents requested the District reevaluate L.C. by performing an individualized educational evaluation ("IEE") at public expense.[17] The District refused to provide an IEE and then filed a due process complaint in defense of its evaluation summary report.[18]

On April 21, 2017, the Due Process Hearing Panel ordered the District fund an independent psychiatric assessment and independent functional behavioral assessment.[19] The Hearing Panel also ordered the District to repeat occupational therapy, speech and language, and neuropsychological assessments.[20] Finally, the Hearing Panel ordered L.C.'s adoptive parents to choose a psychiatric and behavioral specialist to perform the independent assessments from a list of specialists created by the District.[21]

### b. L.C. sues the District appealing parts of the Hearing Panel's Order.

Ninety days later, L.C., through her counsel The McAndrews Firm, sued the District under the Individuals with Disabilities Education Act ("IDEA").[22] L.C.'s counsel challenged the Hearing Panel's Order requiring L.C. to choose from a list of evaluators created by the District for the psychiatric and functional behavioral assessments and requiring the District "repeat" the occupational therapy, speech/language, and neuropsychological assessments, rather than provide for independent assessments. L.C. seeks a wider choice of evaluators – not just those selected by the District. L.C. also seeks an order requiring the District perform an IEE at public expense.

The District did not appeal the Hearing Panel's April 21, 2017 Order.

### c. After suit, the adoptive parents terminate rights and the state appoints fiduciaries to protect L.C.

For reasons immaterial to our issues today, L.C.'s adoptive parents agreed to terminate their parental rights over L.C. after beginning this case. The state stepped in to protect L.C.

The Family Court terminated B.C. and A.Z.'s parental rights of L.C. upon consent.[23] The parental rights of L.C. are now vested in the Department of Services for Children, Youth and Their Families, Division of Family Services.[24] During the course of L.C.'s dependency proceeding, the Family Court appointed Elizabeth Soucek, Esq. as L.C.'s attorney under 13 Del. C. § 2504(f).[25] Under § 2504(f) an appointed attorney must follow the duties and rights outlined in 29 Del C. § 9007A.[26] Under § 9007A, the appointed attorney's scope of representation is limited to representing "the best interests of the child in all child welfare proceedings."[27] Attorney Soucek confirmed her limited role in an email communication to both The McAndrews Firm and the District.[28] Attorney Soucek described herself as L.C.'s "Child Attorney" or "guardian ad litem."[29] Attorney Soucek confirmed she does not represent L.C. in this IDEA lawsuit.[30] Attorney Soucek believes her representation of L.C. is limited to L.C.'s dependency proceeding in Family Court.[31]

The Delaware Department of Education appointed Linda Lett as an educational surrogate parent for L.C.[32] Ms. Lett is a retired Maryland teacher volunteering for this important role during her earned retirement through Delaware's Educational Surrogate Parent Program. Through the Program, the Department appoints educational surrogate parents to children with special needs who are in foster care to ensure the children's educational rights under IDEA and state law are satisfied. As L.C.'s educational surrogate parent, Ms. Lett is responsible for representing L.C.'s interests in special education decisions and holds equal rights as a parent in those decisions.[33] Ms. Lett also has the right and responsibility to provide consent for

4

educational evaluations.[34] She attends meetings with the District to discuss L.C.'s education. Ms. Lett explained the Program is perfect for her because she enjoys working with children but does not miss the paperwork required to be completed as an educator.[35]

### d. L.C. moves for judgment on the Panel's alleged error.

Back in our Court, L.C. through her counsel timely moved for judgment on the administrative record arguing the Hearing Panel erred in limiting the choice of evaluators for the mandated assessments and requiring the District repeat certain assessments, rather than provide for independent evaluations.

During the pendency of L.C.'s motion for judgment based on the administrative record, the District moved to dismiss.[36] The District argues L.C. lacks standing to pursue her claim because her adoptive parent's parental rights are terminated. The District argues because Ms. Lett expressed her desire to discontinue this action, L.C.'s lawyers at the McAndrews Firm may not prosecute L.C.'s claim. The District argues Ms. Lett controls the litigation and may discontinue the action if she believes the litigation is not in the best interests of L.C.

We held a hearing on February 15, 2018 for Ms. Lett to show cause as to whether dismissing the claim for an expanded list of potential evaluators is in L.C.'s best interest.[37] At our hearing, the District admitted it does not have an in-house evaluator capable of performing the neuropsychological assessment.[38] The District plans to consult a private evaluator to perform the neuropsychological assessment.[39]

Ms. Lett told us why she thought the assessments were not necessary. Ms. Lett explained the testing would be duplicative and not provide the District with new information about L.C.[40] Ms. Lett believes the District is providing L.C. an appropriate education based on its analysis of sufficient information.[41] Ms. Lett believes L.C. is not demonstrating issues at school which

5

warrant further testing.[42] Ms. Lett also attributed any claimed issues observed in the classroom to L.C.'s former adoptive parents.[43] Ms. Lett thought L.C.'s former adoptive parents required "outrageous things" from the District and L.C and created an unsuitable environment for L.C. to thrive academically.[44] Ms. Lett bases her opinion on her review of L.C.'s limited access education file, a 10 minute face-to-face meeting with L.C., observations of L.C. in the classroom, and consultation with L.C.'s IEP team.[45]

It became clear at the best interest hearing Ms. Lett did not understand the nature of relief sought in L.C.'s complaint. Ms. Lett believed the lawsuit related to the merits of whether the assessments ordered to be completed by the Hearing Panel would take place.[46] She did not know the Hearing Panel requires the assessments and the District does not challenge the Hearing Panel's findings.[47] She also did not know the issue raised by L.C.'s motion for judgment is whether the Hearing Panel erred in defining the available evaluators to perform the certain assessments.[48] We went to great length to clarify Ms. Lett's confusion.

At the hearing we also heard from Kathie Herel, Coordinator of the Educational Surrogate Parent Program. Ms. Herel explained she never faced a similar issue we face today where the Hearing Panel ordered certain tests to be completed and the educational surrogate disagreed with the findings and seeks discontinuation of a lawsuit challenging certain aspects of the Hearing Panel's Order.[49] Ms. Herel acknowledged Ms. Lett's and her misunderstanding of the relief sought in L.C.'s complaint.[50] After we clarified the nature of L.C.'s lawsuit, Ms. Herel characterized the lawsuit as a "safeguard right that a parent would exercise."[51] Ms. Herel explained she and Ms. Lett would meet to discuss whether Ms. Lett still seeks to discontinue the lawsuit given the clarification of relief sought.[52]

At the conclusion of the hearing where we clarified the Hearing Panel's April 17, 2017 Order under appeal, we directed Ms. Lett to provide her updated position to The McAndrews Firm.[53] Ms. Lett then told The McAndrews Firm she still wishes to voluntarily dismiss L.C.'s complaint.[54] Ms. Lett further explained she accepts the Hearing Panel's Order and will work with the District to ensure all assessments are completed.[55]

After receiving Ms. Lett's continuing position, The McAndrews Firm moved for the appointment of a guardian ad litem. L.C.'s counsel argues Ms. Lett is not pursuing L.C.'s best interests because Ms. Lett wants to voluntarily dismiss this litigation without offering valid justification and without consideration from the District. The McAndrews Firm expresses concern Ms. Lett will not enforce the Hearing Panel's Order given her position the testing is unnecessary. The District opposes the appointment of a guardian ad litem. The District argues it is unnecessary to appoint a guardian because Ms. Lett is acting as L.C.'s representative in this litigation and has the right to discontinue the lawsuit and Attorney Soucek is already appointed as a guardian.

## II.    Analysis

We must decide only whether dismissing this case, particularly at this late stage with little or no further involvement from L.C.'s counsel and with no consideration in exchange, is in L.C.'s best interests and whether we can proceed in this IDEA appeal given Ms. Lett's interest in discontinuing the appeal.

IDEA provides children with disabilities in participating states an enforceable substantive right to a free appropriate public education and conditions federal aid on the state's "compliance with the substantive and procedural goals of [the statute]."[56] "Because Congress was aware that schools had 'all too often' denied a free and appropriate public education to children with

7

disabilities 'without in any way consulting' the children's parents, [IDEA] also 'establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'"[57]  The procedural safeguards include allowing parents to file an administrative complaint challenging the evaluation of a child or provision of a free appropriate education and an impartial due process hearing in response to a complaint.[58]

We need to ensure Ms. Lett understands the April 17, 2017 Order of the due process hearing panel is a final decision which, absent our modification, must be followed. A party may appeal the order.[59] If neither party appeals the hearing panel's order, the order becomes final and binding on the parties.[60] If appealed, the court may affirm the panel's findings, making the panel's order final and binding.[61]

IDEA's procedural safeguards provide parents a means of enforcing the statute's substantive requirements.[62] "Congress 'placed every bit as much emphasis' on school districts' compliance with those procedural safeguards as it did on their compliance with [IDEA's] substantive standards."[63]  Congressional emphasis on procedural safeguards "demonstrates legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content."[64]

## A. L.C. has standing to pursue her appeal.

The District argues we should dismiss L.C.'s complaint for lack of standing because the Family Court terminated L.C.'s adoptive parent's parental rights after filing the complaint. The District argues the McAndrews Firm does not have a client with authority to act on L.C.'s behalf and the only person with authority, Ms. Lett, wishes to discontinue the case.

8

IDEA allows a parent of a disabled child to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such a child."[65] Under IDEA, a parent is defined as a biological or adoptive parent or an appointed surrogate parent.[66]

Against this backdrop, we must consider what happens to the child's claim when an appointed surrogate parent abandons arguments for no consideration which could benefit the child with little or no risk. Federal Rule of Civil Procedure 17(c)(1) provides a general guardian, a committee, a conservator, or a like fiduciary may sue or defend on behalf of a minor or incompetent person.[67] Rule 17(c)(2) allows a minor or incompetent who does not have an appointed representative may sue by a next friend or guardian ad litem.[68] It further provides a court "must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." "Rule 17(c) 'gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent."[69] "The minor's best interests are of paramount importance in deciding whether a Next Friend should be appointed, but the ultimate 'decision as to whether or not to appoint [a Next Friend or guardian ad litem] rests with the sound discretion of the district court . . ."[70]

"District courts have a special duty, derived from [Rule 17] to safeguard the interests of litigants who are minors."[71] In the context of compromises involving minor plaintiffs, "this special duty requires a district court to 'conduct its own inquiry to determine whether the settlements serves the best interests of the minor.'"[72] A district court may reject a proposed compromise found not to be in the minor plaintiff's best interest.[73] "[A] court must

9

independently investigate and evaluate any compromise or settlement of a minor's claim to assure that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem."[74]

The School District seeks dismissal based solely on Ms. Lett's decision. Relying on *Driessen v. Miami-Dade Cnty. Sch. Bd.*,[75] the District argues L.C. lacks standing to pursue her claim because her adoptive parent's parental rights have been terminated. In *Driessen*, a parent brought an IDEA suit *pro se* alleging several IDEA violations.[76] In the complaint, the parent conceded a court order terminated her parental rights.[77] The court of appeals found the parent lacked standing to pursue the IDEA claim because she lacked legal guardianship of the children at issue and affirmed dismissal.[78]

Our case is distinguishable from *Driessen* because Ms. Lett is a parent as defined under IDEA. Ms. Lett may maintain an action under IDEA as L.C.'s educational surrogate.[79] Both parties admit Ms. Lett has authority to act on L.C.'s behalf with respect to her educational rights.[80] Under Fed. R. Civ. P. 17, Ms. Lett may also maintain the action as a fiduciary to L.C.[81] This is not a case where we have no person capable of maintaining the action on L.C.'s behalf. Ms. Lett, with authority to act on L.C.'s behalf on issues relating to her educational rights under her appointment, may maintain this action on behalf of L.C. under IDEA and Fed. R. Civ. P. 17(c)(1).

The District argues even if Ms. Lett may maintain the action on behalf of L.C., Ms. Lett wishes to discontinue the action and we should must allow Ms. Lett to voluntarily dismiss the complaint. At our best interest hearing, Ms. Lett expressed her desire to discontinue this lawsuit.[82] Ms. Lett stated additional psychological and behavioral testing would not be in L.C.'s best interest.[83] Ms. Lett explained she believed the District is providing L.C. an appropriate

education.[84] Ms. Lett expressed the District collected an impressive amount of data and created L.C.'s education plan on sufficient information.[85] Ms. Lett expressed concern the evaluations would disrupt L.C.'s education plan and is unnecessary in light of L.C.'s recent performance in school.[86]

Unfortunately, it became clear at the best interest hearing Ms. Lett did not understand the nature of the relief sought in L.C.'s complaint. She disagrees with the April 17, 2017 Order. But the District did not appeal. The obligations are set. We explained to Ms. Lett the complaint filed on L.C.'s behalf does not challenge the determination the evaluations must be completed and the District does not challenge the Hearing Panel's findings.[87] The testing ordered by the Hearing Panel will be completed by the District. The case instead centers on *who* is to provide the evaluations at issue and from what list of evaluators. We explained *whether* the testing will be completed is not at issue. Ms. Lett did not offer sufficient reason to simply allow the District perform the evaluations at issue, rather than seek independent evaluation.

Even recognizing Ms. Lett's status as L.C.'s parent under IDEA, we may reject her offered compromise of L.C.'s claim if the compromise is not in L.C.'s best interest.[88] Allowing a parent to compromise a minor's claim in violation of the policies advanced by IDEA would directly compromise Congress's intent in drafting IDEA and emphasis on procedural safeguards.[89] Given Ms. Lett's insufficient reasoning for discontinuing this lawsuit and her underlying misunderstanding of the nature of this lawsuit founding her reasoning, Ms. Lett's request is not in L.C.'s best interest.

We find no reason to dismiss L.C.'s claim, which seeks greater selection of evaluators for L.C.'s soon to be scheduled assessments. Maintaining this lawsuit comes at no expense or meaningful time commitment to Ms. Lett. Ms. Lett's belief the District is providing L.C. an

appropriate education is not an appropriate reason to dismiss this action seeking independent evaluation of L.C. in certain upcoming assessments. The District and Ms. Lett have not adduced evidence continuing this litigation would be a disruption or burden to L.C.'s education.

Ms. Lett's concern the lawsuit will interfere with L.C.'s relationship with the District is unsupported.[90] We cannot imagine the extent of twelve-year old L.C.'s "relationship" with the District. Ms. Lett should not be overly concerned with the District's view on continuing this litigation; her obligation is to protect and advance L.C.'s best interests. If Ms. Lett's future conduct manifests a concern with the District's feelings more than L.C.'s progress, we expect Ms. Herel will promptly correct the situation or The McAndrews Firm or possibly Attorney Soucek will seek court intervention. Ms. Lett's role has one focus on L.C.'s progress and does not involve second guessing the April 17, 2017 Order or quasi-lawyering to dismiss L.C.'s limited claims without consideration.

We fully expect, and the District has not offered a reason for us to believe otherwise, the District will not retaliate against L.C. for maintaining this lawsuit. Because Ms. Lett is a parent under IDEA and may maintain this lawsuit on behalf of L.C. and finding Ms. Lett's request for voluntary dismissal of the complaint is not in L.C.'s best interest, we deny the District's motion to dismiss for lack of standing.

## B. We deny L.C.'s present motion for appointment of guardian ad litem.

L.C. moves for the appointment of a guardian ad litem. L.C. argues Ms. Lett is not acting in her best interests as evidenced by Ms. Lett's desire to voluntarily dismiss this lawsuit without consideration from the District. L.C. argues Fed. R. Civ. P. 17 allows us to appoint a guardian ad litem when a minor and the minor's current representative face a conflict of interest.

12

Relying on *Muse B. v. Upper Darby Sch. Dist.*,[91] L.C. argues we should appoint guardian ad litem. But we are not yet at the *Muse B.* level. In *Muse B.*, the mother of Muse B. raised concerns about the implementation of a consent decree entered into with the school district, demanded her consent to the decree be revoked, and alleged her counsel "sold out" her child's rights.[92] The mother attempted to discharge her counsel, but under governing law at the time, the mother could not proceed in the IDEA action *pro se*.[93] After a hearing, the mother consented to continue the lawsuit with her attorneys.[94] But shortly after, the mother again refused to communicate and work with her attorneys delaying resolution of her underlying complaints relating to the consent decree.[95] After a second hearing, the court concluded the mother's repeated inability to work with counsel harmed her child's interests in pursuing claims challenging the consent decree deemed meritorious by her counsel.[96] Despite recognizing a parent's fundamental right to make decisions regarding his or her child's education, the court appointed an independent guardian ad litem.[97] The court ordered the Clerk of Court to reimburse the guardian's fees and costs. The court cited the overriding and compelling need under IDEA of timely resolution of the consent decree implementation dispute.[98] The guardian would consult with the mother, but retained final authority to resolve all issues regarding the implementation of the consent decree.[99]

The District argues the appointment of guardian ad litem is not required because Ms. Lett is acting as L.C.'s representative in this lawsuit and has the authority to discontinue the litigation if she finds it in L.C.'s best interest. We already rejected this argument.

The District also cites the July 20, 2017 Family Court Order appointing Attorney Soucek as L.C.'s attorney in L.C.'s then pending dependency proceeding. The District argues we should not appoint a guardian ad litem in light of Attorney Soucek's appointment in Family Court.

13

We easily dispose of the District's argument we do not need a guardian based on Attorney Soucek's involvement. Attorney Soucek's appointment as L.C.'s child attorney in the dependency proceeding in Family Court is of no moment in this IDEA action. The Family Court appointed Attorney Soucek for the limited role of representing L.C. in her dependency proceeding in state court.[100] Attorney Soucek confirmed her limited role and lack of authority regarding L.C.'s educational rights and this IDEA action.[101] Ms. Soucek is not L.C.'s guardian ad litem or attorney in this litigation. To the contrary, the state's later appointment of Ms. Lett specifically included a role in this IDEA case. We reject the District's argument appoint of guardian ad litem is unnecessary given Ms. Soucek's appointment.

But L.C.'s counsel's argument for a guardian ad litem is also premature. In concluding we need not appoint guardian ad litem, we focus on the facts before us today. Unlike in *Muse B.*, we do not face a present conflict of interest between L.C. and Ms. Lett to the point Ms. Lett's continued role as educational surrogate parent would interfere with L.C.'s best interests. As explained above, Ms. Lett is acting as L.C.'s representative and parent under IDEA and Fed. R. Civ. P. 17. L.C. has not adduced evidence Ms. Lett's continued role as educational surrogate parent and fiduciary under IDEA would interfere with the McAndrews Firm's rather limited prosecution of L.C.'s complaint challenging the Hearing Panel's order. Although we recognize Ms. Lett's desire to discontinue this litigation is not in L.C.'s best interest, L.C. has not adduced evidence demonstrating Ms. Lett's continued involvement would be detrimental to L.C. at this late stage. The McAndrews Firm already filed L.C.'s complaint and motion for judgment on the administrative record. Following the District's response in opposition to L.C.'s motion, we will be ready to assess the merits of L.C.'s claims.[102] The McAndrews Firm completed the necessary steps to present and support L.C.'s claim for our review.

We appreciate The McAndrews Firm's concern of potential issues relating to enforcement of the Hearing Panel's Order. After our February 15, 2018 hearing, Ms. Lett explained she accepts the Hearing Panel's Order and will work with the District to ensure all assessments are completed. Notwithstanding her promise relied upon by us, the McAndrews Firm speculates Ms. Lett will not actively enforce the Hearing Panel's Order given her stated position at the best interest hearing none of the testing is necessary or appropriate. This concern is compounded by the District's statement at the best interest hearing, "It's our position that the Panel's decision does exist. We would ask her for permission to do those evaluations. I guess if she refused to consent, then we can't move forward with it, but I don't think that that's the question for today."[103]

Ms. Lett's disagreement with the Hearing Panel's Order may not serve as a basis to refuse ensuring compliance with the Order. The Hearing Panel's Order is not a recommendation and is written in mandatory language directing the District perform the assessments ordered.[104] The Hearing Panel's purpose is to determine whether a child is receiving appropriate evaluation and a free appropriate public education.[105] Acts by a parent (or Ms. Lett) in violation of a hearing panel's order ensuring these rights may be acts against the child's best interests. We have no evidence today Ms. Lett will disregard the Hearing Panel or judicial order creating a conflict of interest in the future. In her most recent communication to The McAndrews Firm after our best interest hearing, Ms. Lett confirmed she would ensure all assessments ordered by the Hearing Panel are completed.[106]

We deny L.C.'s motion to appoint a guardian ad litem without prejudice to be renewed should L.C. and The McAndrews Firm believe Ms. Lett's and L.C.'s interests have diverged to the extent appointment of guardian ad litem is necessary. We trust Ms. Lett will do as she

promised and, depending on our Order, work with the District to ensure all assessments are completed. She must protect L.C. first. Should Ms. Lett refuse to act in compliance with the Hearing Panel's Order or our Order, such failure to act may present a conflict of interest sufficient to appoint guardian ad litem as well as other possible judicial sanction for disobeying a court order. If further grounds arise, the McAndrews Firm can renew a motion for a guardian ad litem but must propose suitable guardians and whether the proposed guardian will volunteer or the terms of compensation for the proposed guardian including who will pay the guardian in this District.

## III. Conclusion

Our accompanying Order is consistent with our limited role: did the Hearing Panel err in defining *who* will provide the assessments, not *whether* these assessments will be scheduled. We focus our analysis only on the District's motion to dismiss and L.C.'s motion to appoint guardian ad litem. Today, after extensive briefing, evidence adduced at a fairness hearing and considering argument from the District, L.C., and Ms. Lett, we deny both motions.

We deny the District's motion to dismiss as Ms. Lett is L.C.'s parent under IDEA and may maintain an action on her behalf under Fed. R. Civ. P. 17(c). We deny L.C.'s motion for appointment of guardian ad litem because L.C. has not adduced evidence of a present conflict of interest between L.C. and Ms. Lett. We deny L.C.'s motion without prejudice to be renewed should L.C. adduce evidence Ms. Lett is not acting in L.C.'s best interests under Fed. R. Civ. P. 17.

---

[1] ECF Doc. No. 1 ¶ 15.

[2] *Id.* ¶¶ 14, 15.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 16.

[5] *Id.*

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18.

[8] *Id.*

[9] *Id.* ¶ 19.

[10] *Id.*

[11] *Id.* ¶ 20.

[12] *Id.*

[13] *Id.* ¶ 23.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 24.

[17] *Id.*

[18] *Id.* ¶ 25.

[19] *Id.* ¶ 4.

[20] *Id.* ¶ 5.

[21] *Id.* ¶ 6.

[22] 20 U.S.C. § 1400, *et seq.* L.C.'s adoptive parents hired McAndrews Law Office, P.C. ("McAndrews Firm").

[23] ECF Doc. No. 25 at p. 7-8.

[24] *Id.*

[25] ECF Doc. No. 38 at p. 7.

[26] 13 Del. C. § 2504(f).

[27] 29 Del. C. § 9007A(c)(1).

[28] ECF Doc. No. 38 at p. 9.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] ECF Doc. No. 25 at p. 10-11.

[33] *Id.* at p. 10-11.

[34] *Id.*

[35] Transcript of Hearing, February 15, 2018 at p. 31.

[36] The District challenges our jurisdiction under Rule 12(b)(1). Rule 12(b)(1) motions fall into two categories; a facial or factual attack to jurisdiction. A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). When a factual challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations and the court is free to consider evidence outside the pleadings. *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). When a factual challenge is made, the plaintiff bears the burden of proof jurisdiction exists. *Id.*

The District makes a factual attack. The District challenges L.C.'s allegations in the complaint B.C. and A.Z. are L.C.'s parents and argues the post-filing termination of the L.C.'s adoptive parent's parental rights renders L.C. without standing to pursue her claims.

The District also moves for a stay on the briefing schedule on L.C.'s motion for judgment on the administrative record until resolution of its motion to dismiss. We extended the District's time to respond in opposition to L.C.'s motion for judgment to April 12, 2018. ECF Doc. No. 37. In addition to the several weeks since the McAndrews Firm's January 19, 2018 motion for

judgment, the District still has just under three weeks from today's Order to prepare its opposition. We deny the District's motion for a further stay.

[37] Due to illness, she could not travel to the courtroom but with counsels' consent, we heard from Ms. Lett by telephone.

[38] Transcript of Hearing, February 15, 2018 at pp. 84-86.

[39] *Id.*

[40] *Id.* at pp. 36-38.

[41] *Id.* at pp. 37.

[42] *Id.* at pp. 37-38.

[43] *Id.* at p. 38.

[44] *Id.*

[45] *Id.* at pp. 31-32, 53-57.

[46] *Id.* at pp. 61-66.

[47] *Id.*

[48] *Id.*

[49] *Id.* at p. 77.

[50] *Id.* at p.78.

[51] *Id.* at p.78.

[52] *Id.* at pp. 80-81.

[53] *Id.* at pp. 88-89.

[54] ECF Doc. No. 34-1.

[55] *Id.*

[56] *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 408 (3d Cir. 2017) (quoting *Honig v. Doe*, 484 U.S. 305, 310 (1988)).

[57] *Id.* (citing *Honig*, 484 U.S. at 311).

[58] *Id.*; 20 U.S.C. § 1415(b), (f).

[59] 20 U.S.C. § 1415(i)(1)(A); *see also D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014).

[60] *Id.*

[61] *See* 20 U.S.C. § 1415(i)(2)(C)(iii).

[62] *See H.E.*, 873 F.3d at 408 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205 (1982)).

[63] *Id.* (quoting *Rowley*, 458 U.S. at 205-06).

[64] *Id.* (quoting *Rowley*, 458 U.S. at 206).

[65] *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009) (quoting 20 U.S.C. § 1415(b)(6)).

[66] 34 C.F.R. § 300.30(a)(1), (5).

[67] Fed. R. Civ. P. 17(c)(1).

[68] Fed. R. Civ. P. 17(c)(2).

[69] *Sam M. v. Carcieri*, 608 F.3d 77, 85 (1st Cir. 2010) (quoting *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989)).

[70] *Id.* (citation omitted).

[71] *Robiduox v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).

[72] *Id.* (citation omitted); *In re $139,000 in Interpleaded Funds*, No. 16-05092, 2017 WL 700148, *2 (W.D. Ark. Feb. 22, 2017) (collecting cases where district court found duty to safe guard minor's interests in compromises of litigation under Rule 17); *see also Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 667 (E.D. Pa. Jun. 1, 2000) ("The court has an inherent duty to protect the interests of minors and incompetents who appear before it. As part of that duty, the court must determine the fairness of any settlement agreement . . . in a suit brought on behalf of a minor or incompetent.") (internal citation omitted). In resolving matters involving minor plaintiffs, district courts typically rely on a local rule requiring court approval of settlement or voluntary dismissal of the minor's complaint. We cite to outside authority because our District does not presently have this local rule.

[73] *See e.g.*, *Cooper v. Triwest Healthcare Alliance Corp.*, No. 11-2965, 2014 WL 11878352, at *2 (S.D. Cal. Oct. 9, 2014) (rejecting unopposed motion for approval of settlement where settlement "does nothing to protect [minor's] interests").

[74] *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir. 1983) (internal citations omitted).

[75] 520 F. Appx. 912 (11th Cir. 2013).

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] The Department's appointment papers specifically identify Ms. Lett's authority to act as L.C.'s parent under IDEA. ECF Doc. No. 25 at p. 11.

[80] ECF Doc. No. 26 ¶ 10; ECF Doc. No. 38 p. 1.

[81] *See* Fed. R. Civ. P. 17(c)(1).

[82] Transcript of Hearing, February 15, 2018 at p. 75.

[83] *Id.* at p. 49.

[84] *Id.* at p. 37.

[85] *Id.*

[86] *Id.* at p. 49.

[87] *Id.* at p. 62-63.

[88] *See Salmeron*, 724 F.2d at 1364.

[89] *See H.E.*, 873 F.3d at 408.

[90] In their brief filed under our February 22, 2018 Order, the District claims Ms. Lett wishes to discontinue the action in part because she wants to maintain a harmonious relationship between L.C. and the District. ECF Doc. No. 34 at pp. 3-4.

[91] No. 06-343, 2007 WL 2973709 (E.D. Pa. Feb. 14, 2007).

[92] *Id.* at *1.

[93] *Id.* at *1-2.

[94] *Id.* at *2.

[95] *Id.* at *2.

[96] *Id.* at *3.

[97] *Id.* at *4.

[98] *Id.*

[99] *Id.* at *4-5.

[100] ECF Doc. No. 38 at p. 7.

[101] *Id.* at p. 9.

[102] The District's response is due April 12, 2018.

[103] Transcript of Hearing, February 15, 2018 at p. 62-63.

[104] ECF Doc. No. 7-1 at pp. 7-10.

[105] *See H.E.*, 873 F.3d at 408.

[106] ECF Doc. No. 34-1.